Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Royal Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. A Form 21 Agreement for Compensation, dated 1 February 1994, was executed by the parties.
5. Plaintiff's average weekly wage was $372.75, which yields a compensation rate is $248.51, based upon the Form 22 Wage Chart.
6. The parties stipulated 293 pages of medical reports into the record.
7. Judicial Notice is taken of the Form 21 Agreement which was submitted to the Industrial Commission on March 23, 1994. This document was rejected and returned to the carrier by transmittal Form 53, dated May 2, 1994, which indicated the form agreement was rejected due to its not being signed by the employer, and due to a problem with the shown compensation period.
 ***********
The Full Commission adopts, with some modification, the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-nine year old ninth grade educated male who was separated from his spouse and living with his parents. He was six feet tall and weighed two hundred pounds. Plaintiff had prior work experience as a heavy equipment operator, a crane operator, a construction worker, and building, painting and installing signs.
2. On 13 January 1994, plaintiff had been employed with defendant-employer for approximately eighteen months, and on that date he was working with the landscape crew on the campus of the University of North Carolina at Charlotte, clearing trees.
3. Plaintiff was injured on 13 January 1994, when a tree fell on his left foot. Plaintiff was initially treated at the emergency room of University Hospital, where he was diagnosed with a non-displaced fracture at the base of the second toe and a crush type contusion to the left foot.
4. Plaintiff was referred to Dr. Matthew Ohl on 17 January 1994. A short leg cast was applied, and plaintiff was prescribed pain medication.
5. On 10 February 1994, plaintiff returned to Dr. Ohl, at which time he complained of feeling a pop two weeks prior. An examination revealed that plaintiff had dislocated the distal phalanx of the second toe of the left foot, for which plaintiff subsequently underwent surgery and pin placement at University Hospital. Following the surgery, plaintiff developed an infection in the toe which was treated with antibiotics. The pin was removed on 10 March 1994.
6. On 7 April 1994, plaintiff was examined by Dr. William Davis of the Miller Orthopedic Clinic in Charlotte. Following the examination, Dr. Davis formed the opinion that plaintiff either had a non-union of the fracture of the second metatarsal or had developed reflex sympathetic dystrophy (RSD). Diagnostic testing and scans revealed that the fracture had healed satisfactorily, and Dr. Davis diagnosed plaintiff with RSD which was causally related to the injury of 13 January 1994.
7. On 5 July 1994, plaintiff was seen by Dr. Joshua Miller of Southeast Pain Care, where he was diagnosed with RSD. Nerve blocks and an epidural catheter were ordered. However, plaintiff did not report any significant relief from his symptoms.
8. From 20 October 1994 through 14 December 1994, plaintiff participated in an interdisciplinary therapy, vocational, and pain management program at The Rehab Center. A functional capacity evaluation found plaintiff capable of performing light to medium level work, lifting thirty-five pounds infrequently and twenty pounds frequently, with no prolonged standing or long distance walking.
9. Plaintiff returned to Dr. Miller on 20 December 1994, at which time he was restricted to working eight hours per day in a mostly sitting position, standing no more than fifteen minutes at a time, and carrying fifteen to twenty pounds. Although a variety of medications were prescribed, plaintiff allegedly did not experience significant relief from his symptoms.
10. On 20 December 1994, Dr. Davis found plaintiff had reached maximum medical improvement and that he was able to return to work on 1 January 1995 with restrictions of twenty pounds lifting, no prolonged pushing, only fifteen minutes at a time of stair climbing or standing, and of driving an automatic transmission vehicle. Plaintiff was also provided an orthotic shoe insert. On 11 January 1995, Dr. Davis found that plaintiff retained a thirty-five percent permanent partial impairment to the left lower extremity.
11. In February and March 1996, plaintiff was frequently seen at Leather and Lace, a topless bar located in Gastonia, North Carolina.
12. Defendant-carrier retained private investigators to perform surveillance on plaintiff in February 1996, during which plaintiff was observed at Leather and Lace. On 28 February 1996, plaintiff informed an investigator that he was the bouncer for the VIP Area. The VIP Area was the private room where topless dancers took customers for private dances, for which the customer paid $20.00 per dance. The dancer would be responsible for paying $5.00 per private dance to the bouncer.
13. Plaintiff is shown on a surveillance videotape, reviewing paper and writing on a clipboard in the VIP Area. Plaintiff is also shown behind the bar.
14. According to Winfred Seigler, the manager of Leather and Lace, the duties of the bouncer in the VIP Area included using a pad and clipboard to note which dancers went in the room, in order to collect the $5.00 per dance fee. Mr. Seigler's description of these duties is consistent with the activities performed by plaintiff in the videotape. In addition, Mr. Seigler indicated that customers were not allowed behind the bar.
15. On 4 May 1996, plaintiff was picked up by ambulance at Leather and Lace due to complaints of chest pains. At the emergency room at Gaston Memorial Hospital, plaintiff reported that he had been working at Leather and Lace that evening when he experienced chest pains.
16. The credible evidence in the record established that plaintiff was employed at Leather and Lace from at least 28 February 1996 through May 1996, during which he was paid $5.00 per private dance by each dancer using the VIP Area, yielding income which met or exceeded plaintiff's pre-injury wage. Any testimony to the contrary is specifically rejected as not being credible. The Full Commission declines to overrule the Deputy Commissioner's credibility findings in this case. In any event, plaintiff failed to show that he made a reasonable effort to find employment within his restrictions.
17. On 2 June 1996, plaintiff began working at Quality Metal Products in Gastonia, where he was paid $8.00 per hour. This met or exceeded plaintiff's pre-injury wage.
18. On 26 June 1996, plaintiff voluntarily terminated his employment with Quality Metal Products, due to his admission to Broughton Hospital in Morganton. This hospitalization was not due to plaintiff's injury by accident, but rather was due to personal circumstances.
19. Upon consideration of all medical records and depositions, there is insufficient medical evidence in the record to support a finding that plaintiff is incapable of performing work due to pain. Plaintiff's complaints of pain to the contrary are not accepted as credible.
20. Plaintiff has the capacity to earn wages equal to or greater than the pre-injury wage.
21. Plaintiff was paid weekly benefits by defendant-carrier from the date of the injury through 22 March 1996, when defendants advised plaintiff that benefits would be terminated due to his returning to employment at Leather and Lace. This termination of benefits was not subject to the Form 24 procedure, as no Form Agreement for Compensation had been approved by the Commission.
22. On 16 March 1996, plaintiff was observed carrying a bed headboard, boxes, a lamp and stereo speaker. Plaintiff also carried a bedrail with the assistance of two other persons. While plaintiff contended these activities were within his lifting restrictions, they do show him to be capable of walking distances while carrying heavy objects.
23. Defense of plaintiff's claim was upon reasonable grounds.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 13 January 1994. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury, plaintiff was entitled to temporary total disability compensation at the rate of $248.51 per week for the period from 13 January 1994 through 28 February 1996. N.C. Gen. Stat. § 97-29. Defendants have paid these benefits in full and are due a credit for compensation paid from 28 February 1996 through 22 March 1996.
3. As the Form 21 Agreement was not approved by the Commission, there exists no award or order which would create a presumption of disability. Therefore, plaintiff bears the burden of proof to establish the existence and extent of disability. Plaintiff failed to show that his wage earning capacity was impaired after 28 February 1996.
4. Plaintiff is entitled to permanent partial disability compensation at the rate of $248.51 per week for seventy weeks as a result of the thirty-five percent rating to the left lower extremity. N.C. Gen. Stat. § 97-31(15).
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay permanent partial disability compensation at the rate of $248.51 per week for seventy weeks. This amount is subject to a credit to defendants for weekly benefits paid from 28 February 1996 through 22 March 1996.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendants shall pay the costs.
 S/_________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/______________________ BERNADINE S. BALLANCE COMMISSIONER